**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JEFFREY GALLAHER AND ROSA | : | |
| GALLAHER | : | |
|     Plaintiffs, | : | |
| | : | **CIVIL ACTION NO.** |
| v. | : | **3:14-cv-1877 (VLB)** |
| | : | |
| US BANK NATIONAL ASSOCIATION, | : | **March 22, 2016** |
| WELLS FARGO BANK, AND | : | |
| AMERICAN SERVICING COMPANY, | : | |
|     Defendants. | : | |

<u>**MEMORANDUM OF DECISION GRANTING AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS [Dkt. #19]**</u>

      Plaintiffs Jeffrey and Rosa Gallaher (the "Gallahers"), proceeding *pro se*,

bring claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §

1692, *et seq.*, the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, the

Connecticut Consumer Collection Agency Act ("CCCAA"), Conn. Gen. Stat. § 36a-

885, *et seq.*, the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen.

Stat. § 42-110a, *et. seq.*, and a state law invasion of privacy claim against

Defendants US Bank, National Association ("US Bank"), Wells Fargo Bank

("Wells Fargo"), and American Servicing Company ("ASC").[1]  For the reasons that

follow, the Defendants' Motion to Dismiss is GRANTED in part and DENIED in

part.

---

[1] The parties agree that ASC is a division of Wells Fargo that services loans for other investors under the ASC name.  [Dkt. #17, Am. Compl. at ¶ 5; Dkt. #19, Defs.' Memo. at 4, n. 2].  Accordingly, the Court hereinafter refers to both Wells Fargo and ASC as the "Wells Fargo Defendants."

I.     Factual Background

A.     State Court Foreclosure Proceeding

This case is related to a state court foreclosure action in the Superior Court for the Judicial District of Stamford/Norwalk at Stamford, Connecticut, captioned *US Bank National Association, As Trustee For the Structured Asset Investment Loan Trust, 2006-BNC3 v. Rosa Davis Gallaher, et al.*, No. FSTCV106003384S (the "Foreclosure Action").[2]  In 2006, Plaintiffs borrowed $579,500.00 from BNC Mortgage, Inc. ("BNC") to purchase real estate. [Dkt. #19-2, Ex. B. to Defs'. Mot. at ¶ 3].  Incident to the financing, Plaintiffs executed and delivered a note in consideration for a loan in the amount of $579,500.00 to BNC.  [*Id.*].  In further consideration for the loan by BNC, Plaintiffs executed a mortgage to BNC to secure the note, which they delivered to Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee for BNC.  [*Id.* at ¶ 4].  At some point, the mortgage was assigned to US Bank, National Association, as Trustee for the Structured Asset Investment Loan Trust, 2006-BNC3 ("US BANK 2006-BNC3").

---

[2] The Court properly takes judicial notice of the records and pleadings in the Foreclosure Action, as the Defendants challenge this Court's subject matter jurisdiction under the *Rooker-Feldman* doctrine and assert the defenses of res judicata and collateral estoppel.  *See Makaraova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings.") (citation omitted); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005) ("[I]n considering a res judicata defense, a court may judicially notice prior pleadings, orders, judgments, and other items appearing in the court records of prior litigation that are related to the case before the Court."); *Can v. Goodrich Pump & Engine Control Sys., Inc.*, 711 F. Supp. 2d 241, 246 (D. Conn. 2010) ("On a motion to dismiss under Rule 12(b)(6), judicial notice may be taken of other judicial documents that might provide the basis for issue preclusion.") (citing *Day v. Moscow*, 955 F.2d 807, 811 (2d Cir. 1992)).

[*Id.*].  This assignment suggests that the note and mortgage were securitized, meaning they were sold together with other loans to create a synthetic investment security.  The assignment was to be recorded on the Stamford Land Records.  [*Id.*].

On or about January 21, 2010, US Bank 2006-BNC3 commenced the Foreclosure Action, asserting that the note was in default and seeking a foreclosure of the mortgage.  [*Id.* at 1].  Neither of the Wells Fargo Defendants was a party to the Foreclosure Action.[3]  That same day, US Bank 2006-BNC3 filed a notice of *lis pendens*, which stated that the mortgage was assigned to US Bank 2006-BNC3 by virtue of an assignment of mortgage to be recorded on the Stamford Land Records.  [*Id.* at 9].

After the commencement of the Foreclosure Action, on April 25, 2012, MERS assigned the mortgage to US Bank National Association, as Trustee for Structured Asset Investment Loan Trust Mortgage Pass-Through Certificates, Series 2006-BNC3 ("US Bank Mortgage Pass-Through").  [Dkt. #23, Ex. A to Pl.'s Opp. at 8].  On July 5, 2013, US Bank 2006-BNC3 filed a motion to substitute US Bank Mortgage Pass-Through as plaintiff in the foreclosure proceeding, and in support of the motion, it attached the April 25, 2012 assignment.  [Dkt. #1, Ex. A to Compl. at 16].  On July 23, 2013, absent objection from the Gallahers, the court granted the motion.  [Dkt. #19-1, Ex. A to Defs.' Mot. at 5]; *US Bank National*

---

[3] The relationship between the Wells Fargo Defendants and Defendant US Bank with regard to the Gallahers is presently unclear.  Without support, the Amended Complaint characterizes the Wells Fargo Defendants as "accomplices/agents" of Defendant US Bank.  [Dkt. #17, Am. Compl. at ¶ 7].

*Association, As Trustee For the Structured Asset Investment Loan Trust, 2006-BNC3 v. Rosa Davis Gallaher, et al.*, No. FSTCV106003384S, Dkt. No 130.86.

On November 1, 2013, Kelly Cornelious prepared an affidavit of debt on behalf of US Bank Mortgage Pass-Through.  [Dkt. #1, Ex. C to Compl. at 23].  The affidavit stated that US Bank Mortgage Pass-Through "was in possession of the [promissory] [n]ote prior to 1/21/2010."  [*Id.* at 23, ¶ 4].  As for the outstanding balance on the mortgage, the affidavit stated that the total amount owed was $793,950.04.  [*Id.* at 24].   This figure included the total remaining principal amount of $571,308.72, and unpaid interest which accrued at a rate of 7.5% between September 1, 2009 and October 15, 2013, totaling $176,606.81.  [*Id.*].  The original principal amount of the mortgage was $579,500.  [*Id.* at 23, ¶ 2].

The Superior Court conducted a foreclosure hearing, granted the plaintiff's motion for and entered an order of strict foreclosure on December 16, 2013, vesting title in the property to the mortgagee upon the expiration of the law day. [Dkt. #19-3, Ex. C to Defs.' Mot. at 2].  The foreclosure judgment set March 11, 2014 as the first law day.  [*Id.*].  The court also found that the mortgage debt due and owing equaled $571,308.72, the amount averred by US Bank Mortgage Pass-Through in its affidavit of debt.  [*Id.*].  Nowhere do the Gallahers contend that this judgment was provisional, tentative, or anything other than a final judgment on the merits for the purposes of appeal.

The Gallagers unsuccessfully sought vacatur of the judgment of strict foreclosure.  Approximately three weeks after the Superior Court entered the judgment, on January 29, 2014, the Gallahers filed with the foreclosure court a

notice of dispute of debt, pursuant to the FDCPA.  *See* [Dkt. #1, Ex. B to Compl. at 20-21; Dkt. #23, Ex. B to Pl.'s Opp. at 11-12; Dkt. #19-1, Ex. A to Defs.' Mot. at 6, Dkt. No. 146.00].  In it, the Gallahers requested that US Bank Mortgage Pass-Through provide "'verification' and debt validation as defined by 15 U.S.C. [§] 1692," and they challenged, *inter alia*, "the identity of the true owner (if any) of the alleged debt, the alleged amount due and owing . . . and [US Bank Mortgage Pass-Through]'s authority and capacity to collect and or sue on behalf of the same." [Dkt. #1, Ex. B to Compl. at 20; Dkt. #23, Ex. B to Pl.'s Opp. at 11].  The Gallahers also contended that the Wells Fargo Defendants (non-parties to the Foreclosure Action) reported a mortgage debt on their consumer credit reports, which they claimed was inaccurate, and sought an order requiring them "to delete the inaccurate information immediately pursuant to 15 U.S.C. § 1681, *et al*."  [Dkt. #1, Ex. B to Compl. at 21; Dkt. #23, Ex. B to Pl.'s Opp. at 12].  The Gallahers stated that in the event Wells Fargo and ASC did not delete this information, they intended to file a counterclaim for damages incurred as a result.  [*Id.*].  In addition, the day before the first law day, on March 10, 2014, the Gallahers filed a motion to open judgment and extend the law day.  [Dkt. #19-1, Ex. A to Defs.' Mot. at 6, Dkt. No. 148.00].  The following month, on April 7, 2014, US Bank Mortgage Pass-Through filed a timely motion for deficiency judgment.  [*Id.* at Dkt. No. 151.00].  On November 14, 2014, the Superior Court conducted a hearing on the Plaintiffs' motions.  *See* [Dkt. #19-4, Ex. D to Defs.' Mot. at 1].  On November 18, 2014, the Superior Court entered an order denying the Gallahers' motions.  [*Id.* at Dkt. Nos. 146.01, 147.88, 148.86].   In its orders denying the motions, the court

stated only that "[o]n December 16, 2013 a judgment of strict foreclosure entered against the defendants and a law day of March 11, 2014 was ordered.  The defendants failed to redeem by the law day and therefore title vested in the plaintiff by reason of the 3/11/2015 law day."  *US Bank National Association, As Trustee For the Structured Asset Investment Loan Trust, 2006-BNC3 v. Rosa Davis Gallaher, et al.*, No. FSTCV106003384S, Dkt. Nos. 146.01, 147.88, 148.86.

On December 1, 2014, after title vested with US Bank, the Gallahers filed a second motion to open and vacate the judgment.  [*Id.*].  On December 31, 2014, the court denied this motion as well.  *See* [Dkt. #19-4, Ex. D to Defs.' Mot. at 2].  In its memorandum of decision, the court noted that the Gallahers' motion was "premised on two inter-related propositions – plaintiff [US Bank Mortgage Pass-Through] is not properly characterized as a creditor but rather is a debt collector within the meaning of 15 U.S.C. § 1692(a)(6), and the court lacked jurisdiction to entertain the foreclosure action brought by plaintiff in that capacity."  [*Id.* at 3].  Upon reviewing the record, the court concluded that there was "no evidence . . . to support the claim that plaintiff, as assignee/transferee of the loan documents, is merely a debt collector."  [*Id.* at 4].  Thus, the court "reject[ed] this contention on the merits."  [*Id.* at 5].

The court reviewed the December 16, 2013 proceedings, and noted that on that date:

> [The Gallahers] also claimed that [US Bank Mortgage Pass Through] was simply a debt collector and therefore not entitled to bring a foreclosure action.  That issue was rejected by the court . . . [T]he court was presented with the original note, mortgage, and assignment, and accepted them over the objection of [the Gallahers].  Implicitly, then, the court found the assignment to be valid, in

> ordering a judgment of strict foreclosure.  By refusing to
> acknowledge the validity of the paperwork being presented to the
> court, the status of the plaintiff as a property party to the action was
> at least partially placed in issue by [the Gallahers], and adjudicated
> by the court.

[*Id.* at 5-6].

Indeed, during the December 16, 2013 proceedings, the Gallahers
"acknowledged that [US Bank Mortgage Pass-Through] was the current holder of
the note and mortgage."  [*Id.* at 6].  The Court then held that, "[i]n the absence of
any evidence that might undermine the validity of the assignment or [US Bank
Mortgage Pass-Through]'s otherwise proper status as a party with standing to
pursue this matter, the court declines to revisit the issue."  [*Id.*].

On January 16, 2015, the Gallahers filed a motion for reconsideration.  *See*
[Dkt. #19-5, Ex. E to Defs.' Mot. at 2].  However, with this motion still pending, on
January 20, 2015, the Gallahers filed an appeal with the Connecticut Appellate
Court.  *See* [Dkt. #19-6, Ex. F at 2].  On February 23, 2015, the trial court issued a
decision granting reconsideration but denying any relief.  [Dkt. #19-5, Ex. E to
Defs.' Mot. at 2].  In its decision, the court initially observed that "[t]he motion
invokes the Fair Debt Collection Practices Act–both the Federal Act . . . and the
State counterpart" and noted "that there is no explanation as to why these
matters could not have been, or were not, presented to the court in connection
with the entry of judgment."  [*Id.*].  In addition, the court found that, even if US
Bank Mortgage Pass-Through satisfied the definition of "debt collector" within
the meaning of the FDCPA, the Gallahers failed to explain how its "status as a
debt collector under the Act in any way undermines the propriety of the judgment

that was entered in its favor in this case."  [*Id.* at 3].  On March 11, 2015, the Appellate Court granted US Bank's motion to dismiss the appeal.  [Dkt. #19-6, Ex. F at 3].

**B.     The Amended Complaint in the Present Action**

On December 16, 2014, after the judgment of strict foreclosure was entered in the Foreclosure Action but well before the matter had concluded, the Gallahers filed the instant action.  *See* [Dkt. #1, Compl.].  On April 6, 2015, they filed an amended complaint.  *See* [Dkt. #17, Am. Compl.].  The Amended Complaint asserts nine claims.  In the first eight claims, the Gallahers allege that the Defendants violated the FDCPA, Connecticut's analogue, the CCCAA, and CUTPA.  [*Id.* at 5].

First, they allege that Defendant US Bank "masquerade[d] as a bona-fide creditor" and misrepresented "the character, amount, and legal status" of the debt they were seeking to collect, in violation of 15 U.S.C. § 1692e, Connecticut's analogue, the CCCAA, and CUTPA in two ways. [*Id.* at ¶ 13].  While not perfectly clear, the Gallahers appear to contend that the July 5, 2013 motion to substitute party filed by an entity of Defendant US Bank in the underlying foreclosure proceeding, which was predicated on the April 24, 2012 assignment of the Gallahers' mortgage by MERS to the US Bank entity, establishes that the US Bank entity was not assigned the mortgage until April 24, 2012, and thus, it had no right or ability to foreclose on the property back in January 2010.  [*Id.* at ¶ 7].  Second, they maintain that, because US Bank is not a "creditor" within the meaning of the FDCPA, but was instead a "holder of an assignment received purchased or found

after the alleged debt was in default," it had no right to possess the Gallahers'
property.  [*Id.* at ¶¶ 16-19].

In addition, to the foregoing eight claims, the Gallahers claim that the
Defendants violated the FDCPA notice requirement, contained in 15 U.S.C. §
1692g, and in so failing also violated CCCAA and CUTPA.  [*Id.* at ¶¶ 10-11, 20g-j].
In particular, the Gallahers allege that, despite their January 29, 2014 notice of
dispute, "the Defendants have yet to respond by providing . . . validation and[/]or
proof of claim but continued with their collection activities" through the
Foreclosure Action.  [*Id.* at ¶ 11].

The second count of the Amended Complaint asserts three additional
claims under the FCRA: false reporting, failure to correct false reports, and failure
to investigate.  Specifically, the Gallahers allege that, on or about January 30,
2014, they obtained Mr. Gallaher's consumer credit report and discovered that the
Wells Fargo Defendants had reported a debt in connection with their mortgage.
[*Id.* at ¶ 23].  On or about the same day, they filed disputes with three credit
agencies, Equifax, Experian, and Transunion.  [*Id.* at ¶ 24].  On February 28, 2014,
after communicating with the Wells Fargo Defendants, the credit agencies
concluded that the debt was valid.  [*Id.*].  The credit reports identified the Wells
Fargo Defendants as creditors and stated that the original amount of the
mortgage was $579,500, a balance of $571,308 was owed on the mortgage, the
mortgage called for monthly payments of $4,865, the last payment made on the

mortgage occurred in October 2009, and that the amount past due, as of February 2014, exceeded $250,000.  *See* [Dkt. #1 at 28-32].[4]

The Gallahers claim that the Wells Fargo Defendants "intentionally chose not to delete information found to be inaccurate and erroneous," in violation of 15 U.S.C. § 1681s-2(a).  [Dkt. #17, Am. Compl. at ¶ 28].  In particular, they claim that the Wells Fargo Defendants are not their creditors and that the reported debt was inaccurate.  [*Id.* at ¶¶ 20f., 21, 23].  In addition, they allege that, after receiving notice of the disputes from the reporting agencies, the Wells Fargo Defendants "failed to properly investigate" the disputes, in violation of 15 U.S.C. § 1681s-2(b). [*Id.*].

Finally, the Gallahers bring a state law invasion of privacy claim against the Wells Fargo Defendants, whom they assert "illegally obtained" Mr. Gallaher's consumer credit report.  [*Id.* at ¶ 34].  The Gallahers contend that the Wells Fargo Defendants "are not creditors," and thus had no right to access Mr. Gallaher's credit report.  [*Id.*].

## II.   Legal Standards

As Plaintiffs are proceeding *pro se*, their submissions, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 511 U.S. 89, 94 (2007); *see also Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012).  Nevertheless, *pro se* plaintiffs are not excused from the normal rules of pleading and dismissal.  *See Caidor v. Onondaga Cnty.*, 517 F.3d 601, 605 (2d Cir. 2008) ("*[P]ro se* litigants generally are

---

[4] Two of the reports, from Experian and Transunion list a past due amount of $255,320, while the report from Equifax states that the amount past due as of February 18, 2014 was $250,525.

required to inform themselves regarding procedural rules and to comply with them.") (quotations and citation omitted).

A.    <u>Motion to Dismiss for Lack of Subject Matter Jurisdiction (12(b)(1))</u>

"Federal courts are courts of limited jurisdiction."  *Gunn v. Minton*, __U.S.__, 133 S. Ct. 1059, 1064 (2013).  Subject matter jurisdiction is not waivable, and a lack of subject matter jurisdiction may be raised at any time, by a party or the court *sua sponte*.  *See Gonzalez v. Thaler*, __U.S.__, 132 S. Ct. 641, 648 (2012); *see also Sebelius v. Auburn Reg'l Med. Ctr.*, __U.S.__, 133 S. Ct. 817, 824 (2013) ("Objections to a tribunal's jurisdiction can be raised at any time, even by a party that once conceded the tribunal's subject-matter jurisdiction over the controversy.").  If a court lacks subject matter jurisdiction, it must dismiss the action.  *See* Fed. R. Civ. P. 12(h)(3).

A "district court[s] must take all uncontroverted facts in the complaint as true, and draw all reasonable inferences in favor of the party asserting jurisdiction."  *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).  However, "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings[.]"  *Id.*  "In that case, the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."  *Id.*

1.    <u>Rooker-Feldman Doctrine</u>

Under the *Rooker-Feldman* doctrine, federal district courts may not exercise subject matter jurisdiction over suits that are, in substance, appeals

from state court judgments. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414-15 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). There are four requirements for the application of the *Rooker-Feldman* doctrine: (1) the party raising the claim must have lost in state court; (2) that party's injuries must be caused by the state court judgment; (3) that party's claims must invite the district court to review and reject the state court judgment; and (4) the state court judgment must have been rendered prior to the commencement of the federal court proceedings. *See Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014). The first and last requirements are "procedural," while the second and third requirements are "substantive." *Morrison v. City of New York*, 591 F.3d 109, 112 (2d Cir. 2010).

A judgment is final for *Rooker-Feldman* purposes where "the state proceedings [have] ended." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 291 (2005). While *Rooker-Feldman's* timing requirement "will usually be straightforward," the present case falls within the category of cases which "present difficult questions as to whether 'the state proceedings have 'ended' within the meaning of *Rooker-Feldman* on the federal questions at issue.'" *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 89 (2d Cir. 2005) (quoting *Federacion de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R.*, 410 F.3d 17, 25 (1st Cir. 2005)).

Here, prior to the commencement of this action, the Connecticut Superior Court entered a judgment of strict foreclosure against the Gallahers, and denied their motion to open judgment and extend the law days. *See* [Dkt. #19-3, Ex. C to

Defs.' Mot. at 2; Dkt. #19-1, Ex. A to Defs.' Mot. at 6, Dkt. Nos. 146.01, 147.88, 148.86; Dkt. #1, Compl. at 1].   However, after the Gallahers brought the present action, their second motion to open and vacate the judgment was still pending in the Superior Court, and they subsequently filed a motion for reconsideration with the trial court, and an appeal of the judgment with the Connecticut Appellate Court.   *See US Bank National Association, As Trustee For the Structured Asset Investment Loan Trust, 2006-BNC3 v. Rosa Davis Gallaher, et al.*, No. FSTCV106003384S, Dkt. Nos. 158.00, 163.00, 164.00.   Given that the state trial court proceedings had not been completed and the appeals process not even begun at the time the Gallahers filed the present action, there is considerable doubt, in light of the Supreme Court's statements in *Exxon*, that the *Rooker-Feldman* doctrine applies in this case.   *See In re Haven Eldercare, LLC*, No. 3:11-cv-1090 (MRK), 2012 WL 90179, at *2 (D. Conn. Jan. 10, 2012) (finding that the Second Circuit "has not yet confronted" the question of "whether the *Rooker-Feldman* doctrine prohibits a state court loser from filing a federal challenge to a state court decision while the state case is still being appealed," noting that "district courts within this Circuit [] are split on the question" and citing cases on both sides of the issue).   Fortunately, as in *In re Haven Eldercare*, the Court need not conclusively reach this issue since, as will be shown below, the doctrines of res judicata and collateral estoppel apply, such that the Court reaches the same conclusions it would have even if it applied *Rooker-Feldman* to the Gallahers' claims.

**B.**     <u>**Failure to State a Claim (12(b)(6)) Standard**</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Sarmiento v. U.S.*, 678 F.3d 147, 152 (2d Cir. 2012)(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  While Rule 8 does not require detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 557 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citations omitted).

In general, the Court's review on a motion to dismiss pursuant to Rule 12(b)(6) "is limited to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  However, the Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v.*

*Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).  In addition, courts in this Circuit recognize a "narrow exception" to the principle that allegations should be accepted as true on a motion to dismiss, when the "factual assertions . . . are contradicted by the complaint itself, [or] by documents upon which the pleadings rely . . . ."  *Perry v. NYSARC, Inc.*, 424 F. App'x 23, 25 (2d Cir. 2011); *see also Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995) ("[C]onclusory allegations need not be credited, however, when they are belied by more specific allegations of the complaint.")

    1.  <u>Res Judicata</u>

"When determining the preclusive effect of a state court judgment, a court must apply the preclusion law of the rendering state."  *Faraday v. Blanchette*, 596 F. Supp. 2d 508, 514 (D. Conn. 2009) (citing *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996)).  Under both Connecticut and federal law, res judicata provides that "a final judgment, when rendered on the merits, is an absolute bar to a subsequent action, between the same parties or those in privity with them, upon the same claim."  *Saunders v. Principal Residential Mortg., Inc.*, No. 3:11-cv-1817 (VLB), 2012 WL 4321974, at *5 (D. Conn. Sept. 20, 2012) (citing Connecticut and federal cases).  "[O]nce a case reaches a final judgment on the merits, the parties cannot later relitigate the issues that were raised or could have been raised in that earlier case."  *Id.* (citing *Vandever v. Emmanuel*, 606 F. Supp. 2d 253, 254 (D. Conn. 2009)).

"[A] judgment will ordinarily be considered final 'if it is not tentative, provisional, or contingent and represents the completion of all steps in the

15

adjudication of the claim by the court . . .' [O]ne of the critical factors in determining whether a judicial determination is a final judgment for purposes of res judicata is whether it is also a final judgment for purposes of appeal." *Cadle Co. v. Drubner*, 303 F. Supp. 2d 143, 147 (D. Conn. 2004) (quoting *CFM v. Chowdhury*, 239 Conn. 375, 396, 685 A.2d 1108, 1119 (1996)), *overruled on other grounds by State v. Salmon*, 250 Conn. 147, 735 A.2d 333 (Conn. 1999)). "Courts in this circuit have held, and the Second Circuit has affirmed, that a foreclosure proceeding may constitute an adjudication on the merits." *Saunders*, 2012 WL 4321974, at *8 (citing *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150 (E.D.N.Y. 2010) and noting that the court found that an "earlier state court action, which included a Final Judgment of Foreclosure and Sale" constituted an adjudication on the merits).

With respect to the application of res judicata, "the principle of privity bars relitigation of the same cause of action against a new defendant known by a plaintiff at the time of the first suit where the new defendant has a sufficiently close relationship to the original defendant to justify preclusion." *Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 367-68 (2d Cir. 1995). Stated another way, privity, in the context of res judicata, stands for the proposition that "[o]ne whose interests were adequately represented by another vested with the authority of representation is bound by the judgment, although not formally a party to the litigation." *Expert Elec., Inc. v. Levine*, 554 F.2d 1227, 1233 (2d Cir. 1977). "A key consideration in determining the existence of privity is the sharing of the same legal right by the parties allegedly in privity."

*Tibbets v. Stempel*, 354 F. Supp. 2d 137, 148 (D. Conn. 2005) (quoting *Joe's Pizza, Inc. v. Aetna Life & Cas. Co.*, 236 Conn. 863, 868, 675 A.2d 441, 445 (Conn. 1996)). "Generally, an employer-employee or agent-principle [sic] relationship will provide the necessary privity for claim preclusion with respect to matters within the scope of the relationship, no matter which party is first sued." *Id.* (quoting 18 Moore's Fed. Prac. 3d § 131.40[3][f] (Matthew Bender ed.)).

Finally, to determine whether an action involves the same claim as a prior action, both federal and Connecticut courts apply a transactional test. *See Saunders*, 2012 WL 4321974, at *5 (citing *Weiss v. Weiss*, 297 Conn. 446, 461, 998 A.2d 766, 776 (Conn. 2010)); *FDIC v. Lenz*, 323 F. Supp. 2d 342, 347 (D. Conn. 2004) ("[T]he dominant federal rule is based on a transactional approach to defining the claim."). "The transactional test measures the preclusive effect of a prior judgment, which includes any claims relating to the cause of action that were actually made or might have been made." *Saunders*, 2012 WL 4321974, at *5 (quoting *Legassey v. Shulansky*, 28 Conn. App. 653, 656, 611 A.2d 930, 932 (Conn. App. Ct. 1992) (citations and quotations omitted)). In applying this test, courts look to the "group of facts which is claimed to have brought about an unlawful injury to the plaintiff . . . and [have] noted that even though a single group of facts may give rise to rights for several different kinds of relief, it is still a single cause of action." *Id.* (quoting *Weiss*, 297 Conn. at 461-62, 998 A.2d at 776).

### 2. Collateral Estoppel

"Collateral estoppel, or issue preclusion . . . provides that "once a court has decided an issue of fact or law necessary to its judgment, that decision may

preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'" *Faraday*, 596 F. Supp. 2d at 514 (quoting *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 2014) (quotation and citation omitted)). "Although claim preclusion [res judicata] and issue preclusion [collateral estoppel] often appear to merge into one another in practice, analytically they are regarded as distinct." *Tibbetts*, 354 F. Supp. 2d at 146 n. 18 (quoting *Jackson v. R.G. Whipple, Inc.*, 225 Conn. 705, 712-13, 627 A.2d 374, 378 (Conn. 1993)).

"In Connecticut, to be subject to collateral estoppel, an issue must have been: (1) 'fully and fairly litigated,' (2) 'actually decided,' [] (3) 'necessary to the judgment' in the first action . . . and (4) 'identical' to the issue to be decided in the second action." *Faraday*, 596 F. Supp. 2d at 515 (quoting *Virgo v. Lyons*, 209 Conn. 497, 501, 551 A.2d 1243, 1245 (Conn. 1988) and *State v. Joyner*, 255 Conn. 477, 490, 774 A.2d 927, 935 (Conn. 2001)). "An issue has been fully and fairly litigated if the party against whom collateral estoppel is asserted had a 'full and fair' opportunity to litigate that issue in the prior proceeding." *Id.* (citing *Aetna Cas. & Sur. Co. v. Jones*, 220 Conn. 285, 306, 596 A.2d 414, 425-26 (Conn. 1991)). "An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined." *Id.* (quoting *Joyner*, 255 Conn. at 490, 774 A.2d at 935 (internal quotation omitted). "An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered." *Id.* On the other hand, "[i]f an issue has been determined, but the judgment is not dependent upon the determination of the issue, the parties may relitigate the issue in a subsequent

action." *Joyner*, 255 Conn. at 490, 774 A.2d at 935 (citation and quotations omitted). The "party seeking estoppel has the burden of showing that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." *Gross v. Rell*, 485 F. Supp. 2d 72, 78 (D. Conn. 2007) (quoting *Windsor Locks Assocs. v. Planning & Zoning Comm'n*, 90 Conn. App. 242, 252, 876 A.2d 614, 620-21 (Conn. App. Ct. 2005)).

In addition, "Connecticut has abandoned the rule of mutuality, meaning that even parties that were not actually adverse to one another in the prior proceeding may nonetheless assert collateral estoppel . . . unless [the party precluded from relitigating the issue] lacked full and fair opportunity to litigate the issue in the first action or other circumstances justify affording him an opportunity to relitigate the issue." *Faraday*, 596 F. Supp. 2d at 515 (quoting *Torres v. City of Waterbury*, 249 Conn. 110, 135-36, 733 A.2d 817, 831-32 (Conn. 1999) (citation and quotation omitted)). Thus, the fact that a party in the present action was not a party in the prior state action "does not preclude [that party] from asserting collateral estoppel." *Id.* However, as with res judicata, collateral estoppel "may only be invoked between the same parties or those in privity with them." *Gross*, 485 F. Supp. 2d at 78 (quoting *Joyner*, 255 Conn. at 490, 774 A.2d at 935).[5]

---

[5] The Defendants also claim that counts one and two of the Amended Complaint are barred by the *Noerr-Pennington* doctrine, because Defendant US Bank "possessed a First Amendment right to petition the Connecticut Superior Court to foreclose Plaintiffs' loan for their default." [Dkt. #19, Defs.' Memo. at 19]. While that may be the case, the Defendants make no further attempt to apply the doctrine to the allegations in the Amended Complaint. In addition, to the extent the doctrine is at all relevant, it does not bar either of the first two counts because the Gallahers contend that Defendant US Bank made intentional

III.   <u>Analysis</u>

   A.   <u>Count I of the Amended Complaint is Barred by the Doctrines of Res Judicata and Collateral Estoppel</u>

   Plaintiffs did not bring a counterclaim under the FDCPA or raise the statute as an affirmative defense prior to the state court's entering a judgment of strict foreclosure against them.[6]   However, each of the allegations on which Plaintiffs' FDCPA claim is based was resolved against them in the course of the state court's entry of a strict foreclosure judgment in the Foreclosure Action.

   The Amended Complaint brings a claim under the FDCPA on the basis of several discrete acts, namely, that Defendant US Bank: (i) was not a bona fide

_____

misrepresentations regarding both the debt itself and its status as a creditor. *See Fritz v. Resurgent Capital Servs., LP*, 955 F. Supp. 2d 163, 175, 176-77 (E.D.N.Y. 2013) (holding that "*Noerr-Pennington* does not provide immunity for intentional misrepresentations made in litigation," stating that "[a] collection action by an entity that does not own the underlying debt" falls within the "sham" exception to the doctrine, and declining to apply the doctrine to plaintiff's FDCPA claims); *see also Shetiwy v. Midland Credit Mgmt.*, 980 F. Supp. 2d 461, 476 (S.D.N.Y. 2013) ("To the extent that the *Noerr-Pennington* doctrine applies at all to FDCPA claims based on litigation misconduct by debt collectors . . . Defendants' alleged practice of '[u]sing fraudulent, deceptive, and misleading affidavits and affirmations' . . . would place . . . Defendants' suits under the sham exception.").

[6] The Gallahers did affirmatively raise arguments under the FDCPA in support of their post-judgment motions for reconsideration.  *See* [Dkt. #1, Ex. B to Compl. at 20-21; Dkt. #23, Ex. B to Pl.'s Opp. at 11-12; Dkt. #19-4, Ex. D to Defs.' Mot. at 2-3].  The court addressed one of the arguments, that US Bank was "merely a debt collector" and thus lacked standing to bring a strict foreclosure action, and "reject[ed] this contention on the merits."  [Dkt. #19-4, Ex. D to Defs.' Mot. at 4]. As for the remainder of the Plaintiffs' contentions under the FDCPA and its state law analogue, the court declined to address these arguments, in part, because it found the Plaintiffs could have raised them earlier in the litigation but chose not to.  *See* [Dkt. #19-5, Ex. E to Defs.' Mot. at 2-3 (noting "[a]s a threshold matter . . . that there is no explanation as to why these matters could not have been, or were not, presented to the court in connection with entry of judgment . . . There is no suggestion or apparent claim that [the Gallahers] did not have an opportunity to present these issues during the extended period of time the matter was pending")].

creditor, (ii) misrepresented the character, amount, and legal status of the debt it was seeking to collect, (iii) had no right or ability to foreclose on the property, (iv) had no right to possess the Gallahers' property, and (v) failed to verify the debt. [Dkt. #17, Am. Compl. at ¶¶ 7, 11, 13, 16-19]. However, in entering a judgment of strict foreclosure against the Gallahers, the court considered and necessarily resolved all but one of them. Prior to entering this judgment, the court held argument and US Bank presented the court with the original note, mortgage, and assignment. [Dkt. #19-4, Ex. D to Defs.' Mot. at 4-5]. Over the Gallahers' objection as to the validity of these documents, the court nevertheless entered judgment in favor of US Bank. Indeed, as the court later noted in its memorandum denying the Gallahers' motion to vacate the judgment, at the time it entered the judgment of strict foreclosure, the court "found the assignment" of the mortgage "to be valid." [*Id.* at 4]. It also expressly "rejected" the Gallahers' contention that US Bank "was simply a debt collector and therefore not entitled to bring a foreclosure action." [*Id.*]. Nowhere do the Gallahers maintain that this judgment was not final, nor does any evidence in the record suggest that it was anything other than a final judgment on the merits.[7]

---

[7] As the judgment of strict foreclosure was a final judgment on the merits which necessarily resolved the issues of whether US Bank could properly foreclose on the property, that Plaintiffs did in fact owe the amounts stated in the affidavit of debt to US Bank, and that by the end of the running of the law days, US Bank had the right to possess the property, to the extent Plaintiffs' FDCPA claim is based on a challenge to any of these necessary findings, the claim would also be barred on res judicata grounds. *See, e.g., Schuh v. Druckman & Sinel*, LLP, 602 F. Supp. 2d 454, 467 (S.D.N.Y. 2009) (applying transactional test and contrasting that case with one in which the FDCPA claim was based on an allegation that the bank "seeks to collect on an invalid judgment," because in that instance the allegations underlying the FDCPA claim "and the judgment would arise out of the same disputed transaction").

In addition, the Wells Fargo Defendants may avail themselves of the doctrine of collateral estoppel in order to bar Count I of the Amended Complaint. The Defendants overcome the fact that the Wells Fargo Defendants were not parties to the Foreclosure Action by establishing that they were in privity with Defendant US Bank.  The Defendants point to the allegations in the Amended Complaint, which characterizes the Wells Fargo Defendants as "accomplices/agents" of Defendant US Bank in "the prosecution of a foreclosure."  [Dkt. #17, Am. Compl. at ¶ 7].  The Gallahers further allege that the Defendants "conspired and illegally procured a judgment [of] Strict Foreclosure . . . seized title of [the] property . . . and filed a Motion for Deficiency Judgment to extort additional monies, fees and costs[s]."  [*Id*. at ¶ 8].  Reasonably construed, these paragraphs of the Amended Complaint allege that the Defendants were co-conspirators in a single transaction to defraud the Gallahers by improperly pursuing a strict foreclosure and deficiency judgment, and are thus sufficient to establish privity between them, at least with respect to the conduct that occurred in connection with the Foreclosure Action.  *See Caro v. Fidelity Broker Servs.*, No. 3:14-cv-01028 (CSH), 2015 WL 1975463, at *22 (D. Conn. Apr. 30, 2015) (concluding "that privity exists between the [defendants who were parties to the prior action and those who were not] to the extent the complaint alleges that the [new defendants] conspired with the [previous defendants] to injure Plaintiffs . . . [C]ourts have held that alleged co-conspirators are 'in privity' with one another for res judicata purposes").[8]

---

[8] Even absent res judicata or collateral estoppel, Count I fails as to the Wells Fargo Defendants because the Gallahers simply do not allege any facts

22

The sole remaining allegation in Count I, the Gallahers' contention that the Defendants violated the FDCPA by not verifying the debt, indirectly challenges the validity of the documents US Bank provided in obtaining the strict foreclosure judgment, and is thus barred by the doctrines of res judicata and collateral estoppel.  [*Id.* at ¶ 11].

"Verification of a debt requires only that the debt collector obtain a written statement that 'the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt.'"  *Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 339, 370 (D. Conn. 2012) (quoting *Bascom v. Dubin*, No. 03-cv-6160T, 2007 WL 210387, at *3 (W.D.N.Y. Jan. 25, 2007)).  This is because the purpose of the verification requirement is solely "to eliminate the . . . problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid."  *Id.* (citation and quotations omitted).

Here, in order to obtain a judgment of strict foreclosure, Defendant US Bank was required to, and did in fact, present written documents detailing the amount the Gallahers owed, including the original note and mortgage.  In entering a judgment of strict foreclosure against the Gallahers, the court plainly determined that foreclosure was an appropriate remedy to discharge the debt and that the Gallahers were the individuals who owed it.  *Derisme*, 880 F. Supp. 2d at 359 ("A judgment of strict foreclosure . . . constitutes an appropriation of the

---

indicating that those defendants had any involvement in the events leading up to the judgment of strict foreclosure.  Indeed, they are not mentioned anywhere in the allegations underlying the FDCPA claim, beyond a conclusory reference to serving as an accomplice or agent, which is otherwise unsupported by the record in the Foreclosure Action.  [Dkt. #17, Am. Compl. at ¶¶ 7, 9].

mortgaged property to satisfy the mortgage debt.") (citing *Nat'l City Mortg. Co. v. Stoecke*r, 92 Conn. App. 787, 793, 888 A.2d 95 (Conn. App. Ct. 2006)).  Thus, the only way the Gallahers could presently maintain their verification claim would be to challenge the findings of the state court, which they are barred from doing.[9]

Further, the Gallahers have not clearly stated the factual basis for this claim, but to the extent they allege that the foreclosure action triggers a duty to verify the debt, they are mistaken.  The debt verification provision of the FDCPA is triggered by the collection of a debt.  It provides that "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt a debt collector must provide certain information to the debtor."  15 U.S.C. § 1692g(a).  A foreclosure action is not the collection of a debt, and thus does not trigger the notice provision of the FDCPA.  *Cheung v. Wells Fargo Bank, N.A.*, 987 F. Supp. 2d 972, 977 (N.D. Cal. 2013).  Further, the protective provisions of the FDCPA are superfluous in a foreclosure action because the court must, as it did here, find that he debtor owes the amount of debt claimed to the party seeking foreclosure before the order of foreclosure may enter.  *See Wilshire Credit Corp. v. Kastens*, No. CV 970058213, 1999 WL 49821, at *3 (Conn. Super. Ct. Jan. 21, 1999) ("When seeking strict foreclosure, the moving party must establish the amount of debt owed to it . . . In order to do so, the moving party must present reliable evidence as to the debt.") (citing *New England Bedford Sav. Bank v. Realty Corp.*, 238 Conn. 745, 760, 680 A.2d 301 (Conn. 1996)); *see also Derisme*, 880 F. Supp. 2d at 370 (noting that a state foreclosure proceeding "afforded the

---

[9] The Gallahers' claims under CCCAA and CUTPA, which rely on the same allegations as its FDCPA claim, are also barred by res judicata and collateral estoppel.  *See* [Dkt. #17, Am. Compl. at ¶¶ 20, 20g.].

Plaintiff even more protection than the FDCPA disclosure requirements"). As the Plaintiffs claim that US Bank and Wells Fargo conspired to foreclose and thereby violated the FDCPA by failing to validate the debt, that claim fails.

Accordingly, Count I of the Complaint is DISMISSED in its entirety.

### B. Count II is Barred as to Defendant US Bank Only

Count II of the Amended Complaint alleges that Defendant US Bank, along with the Wells Fargo Defendants, violated the FCRA by (i) furnishing Mr. Gallaher's consumer credit report with false information, namely, the mortgage at issue in the underlying Foreclosure Action and identifying the Wells Fargo Defendants as creditors, (ii) failing to conduct an investigation into the accuracy of this information after Plaintiffs disputed it with the credit reporting agencies, and (iii) refusing to delete the information, which they knew to be inaccurate. [Dkt. #17, Am. Compl. at ¶¶ 20f., 21, 23-24, 28].

Beyond incorporating by reference the earlier allegations against Defendant US Bank and requesting that judgment be entered against it in connection with their FCRA claim, Plaintiffs offer no additional facts supporting their contention that Defendant US Bank violated the FCRA. *See* [*id.* at ¶¶ 21, 31]. Thus, Plaintiffs' FCRA claim against Defendant US Bank fails for two reasons. First, Plaintiffs fail to allege any facts tending to show that Defendant US Bank had anything to do with the addition of the debt and the Wells Fargo Defendants as creditors to Mr. Gallaher's credit report, the investigation following their dispute of this information, and the decision to maintain it on his credit reports. Second, any liability as to Defendant US Bank in connection with this claim would

appear to be based on an implicit challenge of the accuracy of the debt itself, which, for the reasons stated above, Plaintiffs are barred from disputing in the present proceeding.

As for Plaintiffs' FCRA claim against the Wells Fargo Defendants, the Defendants contend both that the claim is barred by the doctrine of collateral estoppel and that the Amended Complaint fails to state a plausible claim.  *See* [Dkt. #19, Defs.' Memo. at 16-18, 25-27].  Neither argument succeeds.

The purpose of the FCRA is to ensure "that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information."  15 U.S.C. § 1681(b).  The FCRA imposes obligations on entities like the Wells Fargo Defendants who furnish credit information to reporting agencies.  *See Kinel v. Sherman Acquisition II LP*, No. 05 Civ. 3456 (RCC) (THK), 2006 WL 5157678, at *13 (S.D.N.Y. Feb. 28, 2006). Two sections of the FCRA govern the furnishing of information to credit agencies.  Section 1681s-2(a) discusses a furnisher's duty to report accurate information and its ongoing duty to correct and update inaccurate information.[10] Section 1681-2(b) governs the furnisher's duties after receiving notice from a credit reporting agency regarding the accuracy of credit information.  This section requires credit furnishers, after receiving notice of a consumer dispute by a credit agency to: (i) conduct an investigation, (ii) review all relevant information

---

[10] Only "federal and state authorities" may bring claims for violations of section 1681s-2(a).  *See Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012); *see also* 15 U.S.C. § 1681s-2(d).

provided by the consumer reporting agency, (iii) report the results of the investigation to the consumer reporting agency; and (iv) if the investigation finds that the information is incomplete or inaccurate, to report those results to all other consumer reporting agencies to which the person furnished the information.  15 U.S.C. § 1681-2(b)(1).  "While the Second Circuit has not yet defined the specific contours of a furnisher's investigatory responsibility under this statute, courts both within and outside the Circuit have 'assum[ed] a reasonableness standard for judging the adequacy of the required investigation.'"  *Dickman v. Verizon Commc'ns, Inc.*, 876 F. Supp. 2d 166, 172 (E.D.N.Y. 2012) (quoting *Okocha v. HSBC Bank USA, N.A.*, 700 F. Supp. 2d 369, 374 (S.D.N.Y. 2010)).

The Amended Complaint advances two theories under the FCRA as to the Wells Fargo Defendants: (i) they failed to properly investigate the Gallahers' disputes and (ii) they intentionally chose not to delete information found to be inaccurate and erroneous.  [Dkt, #17, Am. Compl. at ¶ 28].

At the present stage, the Court cannot dismiss Count II against the Wells Fargo Defendants, nor can it strike either of the Plaintiffs' theories, because the record is bare regarding the nature of the relationship, if any, between the Wells Fargo Defendants and the Plaintiffs.  The Defendants claim that the Wells Fargo Defendants were "the [mortgage] loan's servicer," but the portion of the Amended Complaint, paragraph five, to which they exclusively cite does not support their claim.  [Dkt. #19, Defs.' Memo. at 18].  Paragraph five describes Defendant ASC as a "division of WELLS FARGO" which "services loans for other

investors under the ASC name." [Dkt. # 17, Am. Compl. at ¶ 5]. This vague, barebones description says nothing about whether Defendant ASC performed any services in connection with the mortgage and note at issue in the Foreclosure Action.

Construing the Amended Complaint liberally and in a light most favorable to the Plaintiffs, as the Court must, it may be read to assert that the Wells Fargo Defendants intentionally and inaccurately reported on Mr. Gallaher's credit report that he owed *the Wells Fargo Defendants* the balance of the mortgage. [Dkt. #17, Am. Compl. at ¶¶ 23-24, 25]. Since the state court record depicts only US Bank as the holder of the mortgage and note, there is presently no evidence to indicate that either of the Wells Fargo Defendants are creditors of the Gallahers. Moreover, in the event the Wells Fargo Defendants were *not* creditors, their failure to discover this and correct the error would tend to support the Gallahers' claim that they failed to properly investigate the disputed credit information.

Neither res judicata nor collateral estoppel applies to bar Count II of the Amended Complaint against the Wells Fargo Defendants. There is no evidence that any issues concerning the Wells Fargo Defendants were raised prior to the entry of judgment in the underlying Foreclosure Action. Indeed, the Gallahers could not have raised them at the time judgment was entered, since they allege that they did not discover the changes to Mr. Gallaher's credit report until "[o]n or about January 30th, 2014." [Dkt. #17, Am. Compl. at ¶ 23].[11]

---

[11] Not only did the Gallahers first refer to the Wells Fargo Defendants in the Foreclosure Action after the judgment of strict foreclosure was entered, but the order in response to their notice of dispute provides no indication that the allegations against them were ever taken up or resolved. *See US Bank National*

However, the Gallahers' FCRA claim is limited to the reporting of the Wells Fargo Defendants as their creditor, and may not go forward as to any other information contained in the report.  This is because the Gallahers are estopped from contesting the mortgage debt itself, and the documents the Gallahers attached to their original complaint plainly establish that a reasonable investigation was performed regarding the debt figures contained in the credit reports.  The affidavit of debt, a publicly-filed document, states that the mortgage amount was originally $579,500.00 and the remaining principal owed on the mortgage was $571,308.72.  *See* [Dkt. #1, Ex. C to Compl. at 24].  The credit reports submitted by the Gallahers accurately depict both of these figures, to the penny, on a date prior to the transfer of title to the property.  [Dkt. #1, Ex. D to Compl. at 28; Dkt. #19-3, Ex. C to Defs.' Mot. at 2].[12]

_____

*Association, As Trustee For the Structured Asset Investment Loan Trust, 2006-BNC3 v. Rosa Davis Gallaher, et al.*, No. FSTCV106003384S, Dkt. Nos. 146.01, 147.88, 148.86.

[12] In their Opposition, the Gallahers raise the existence of, but fail to identify, a discrepancy between the figures in the strict foreclosure judgment and the credit report.  *See* [Dkt. #23, Pls.' Opp. at 5].  They are mistaken.  The affidavit of debt contained the total amount of money remaining on the loan, including the outstanding principal, interest, late charges, insurance, and tax disbursements.  *See* [Dkt. #1, Ex. C to Compl. at 24].  The $250,000 "past due" figure in the credit reports appears to have been calculated from the Gallahers' monthly payment schedule ($4,865/month) and the date of their last payment (October 19, 2009).  [*Id.* at 32].  Similarly, the minor discrepancy between the reports regarding the amount past due—less than $5,000 where the total amount was over $250,000—is insufficiently material to support an FCRA claim.  *See, e.g., Enwonwu v. Trans Union, LLC*, 364 F. Supp. 2d 1361, 1367 (N.D. Ga. 2005) (granting summary judgment to defendant on FCRA claim where inaccuracy on plaintiff's credit report was "immaterial" in light of the "indisputably accurate adverse information" on the report).  Regardless, nowhere does the Amended Complaint identify with any particularity the mortgage figures the Gallahers believe are inaccurate, and on which they bring their claim.

Accordingly, Count II of the Amended Complaint is DISMISSED as to US Bank, and may go forward as to the Wells Fargo Defendants, but only with respect to the allegedly inaccurate reporting of the Wells Fargo Defendants as the creditors on the mortgage.

### C.   The Gallahers' Invasion of Privacy Claim May Proceed as to the Wells Fargo Defendants

Finally, given the lack of evidence regarding the nature and extent of the relationship between the Wells Fargo Defendants and the Gallahers, Plaintiffs' invasion of privacy claim survives.  Here, the Gallahers contend that the Wells Fargo Defendants illegally obtained their credit report, that they were not their creditors, they acted intentionally and in bad faith, and as evidence of the Defendants' bad faith, they thereafter altered the substance of the report by adding inaccurate information, which they then refused to remove.  [Dkt. #17, Am. Compl. at ¶¶ 8, 28-29, 34, 36].

First, at the present stage, the Gallahers' invasion of privacy claim appears to fall outside the scope of preemption under the FCRA.  The FCRA contains two sections concerning preemption of state law claims, 15 U.S.C. §§ 1681t(b)(1)(F) and 1681h(e).  Section 1681t(b)(1)(F) states: "No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . [S]ection 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies . . . ."  15 U.S.C. § 1681t(b)(1)(F).  Section 1681h(e) states:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the

> reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e).

In reconciling these two provisions, courts in this district and throughout the Circuit have generally adopted a temporal approach, holding that "state law claims based on action of a furnisher of information after the furnisher has received notice of inaccuracies are held preempted . . . while actions taken before notice has been received may not be preempted." *Ryder v. Washington Mut. Bank, FA*, 371 F. Supp. 2d 152, 154 (D. Conn. 2005) (quoting *Kane v. Guaranty Residential Lending, Inc.*, No. 04-CV-4847 (ERK), 2005 WL 1153623, at *8 (E.D.N.Y. May 16, 2005)); *see also Ahmed v. Bank of Am.*, No. 09-cv-2550 (DLI) (RLM), 2010 WL 3824168, at **3-4 (E.D.N.Y. Sept. 24, 2010).

Since the Gallahers' invasion of privacy claim is predicated on the Wells Fargo Defendants' allegedly unlawful procurement of their credit report, and the Amended Complaint may plausibly be read to suggest that this occurred prior to their receiving notice from either the Gallahers or the credit reporting agencies of the Gallahers' dispute of the information they furnished, the Gallahers' claim is not temporally preempted. In addition, the Amended Complaint clearly alleges that the Wells Fargo Defendants acted intentionally and with malice, such that it overcomes the substantive bar 15 U.S.C. § 1681h(e) imposes on pre-notice invasion of privacy claims.

Second, the case law the Defendants offer in challenging the sufficiency of the allegations in the Amended Complaint is unavailing.  The two unreported district court opinions outside this Circuit they cite are distinguishable.  *See O'Connor v. Wells Fargo, N.A.*, No. C-14-00211 DMR, 2014 WL 4802994, at *5 (N.D. Cal. Sept. 26, 2014) (dismissing FCRA claim against defendant where underlying action established that defendant was in fact plaintiff's creditor); *Daniels v. ComUnity Lending, Inc.*, No. 13CV488-WQH-JMA, 2014 WL 51275, at *6 (S.D. Cal. Jan. 6, 2014) (dismissing FCRA claim where sole allegation was that defendants obtained plaintiff's credit report without a permissible purpose).  The rest of the Defendants' cases are inapposite, because they stand for the proposition that a debt collector may obtain a credit report for the purpose of collecting a debt.  *See* [Dkt. #19, Defs.' Memo at 28 (citing *Veal v. Portfolio Recovery, Inc.*, No. 14-CV-12967-ADB, 2015 WL 1609109, at *3 (D. Mass. Apr.9, 2014) and *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28, 34 (3d Cir. 2011))].  Presently, the record does not establish what purpose—valid or otherwise—the Wells Fargo Defendants were pursuing at the time they obtained Mr. Gallaher's credit report.  While the reporting of a debt owed to Wells Fargo may suggest that they permissibly accessed the Gallaher's credit report for the purpose of collecting a debt, there is nothing on the record establishing that Wells Fargo had any interest in the Gallahers' mortgage.

Finally, the only reference in Count III of the Complaint to Defendant US Bank is extremely vague and devoid of any specific facts relating to accessing Mr. Gallaher's credit report.  *See* [Dkt. #17, Am. Compl. at ¶ 36 ("Whether

negligent or intentional, Defendant [US Bank] knew and or should have known of the persistent misconduct of its incompetent employees, agents, attorney debt collectors, and debt collection agency whom they hired . . . . Defendants were simply allowed and[/]or encouraged to engage in . . . abusive debt collecting practices.")].

The best the Court can surmise is that the Gallahers contend the Wells Fargo Defendants were "employees" or "agents" whom US Bank "hired to engage in the  . . . collection of an alleged debt" and that US Bank is liable to the Plaintiffs under an agency theory.  [*Id.*].  To the extent this allegation is true, it would appear to preclude liability under the FCRA, because in accessing Mr. Gallaher's credit report, the Defendants would have been pursuing a lawful purpose—collecting a debt, which the Gallahers are estopped from contesting. *See Larobina v. First Union Nat'l Bank*, No. CV990170845S, 2004 WL 1664230, at *4 (Conn. Super. Ct. Jun. 28, 2004) (denying plaintiff's motion to strike FCRA preemption defense in response to negligent credit reporting claim because the FCRA "could provide immunity for [defendant] if willfulness or malice is not proven").  Accordingly, Count III of the Complaint is DISMISSED as to Defendant US Bank.

## IV.   Conclusion

For the foregoing reasons, the Defendants' Motion to Dismiss is GRANTED in part and DENIED in part.  Count I of the Amended Complaint is DISMISSED in its entirety, Counts II and III are DISMISSED as to Defendant US Bank, and all claims against Defendant US Bank are DISMISSED with prejudice.   The following

claims may go forward as to the Wells Fargo Defendants, subject to the following limitations: Count II, but only with respect to the reporting of the Wells Fargo Defendants as Plaintiffs' creditors, and Count III, under the theory that the Wells Fargo Defendants willfully, maliciously, and without legal right, accessed Mr. Gallaher's credit report.

IT IS SO ORDERED, ADJUDGED AND DECREED, this 22nd day of March 2016, Hartford, Connecticut

_____/s/_____
Vanessa L. Bryant,
United States District Judge